IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**SOUTHEASTERN STUD AND COMPONENTS, INC.**<br><br>**Debtor.** | **CASE NO. 14-32906-DHW-7** |
| **J. LESTER ALEXANDER, III, Chapter 7 Trustee**<br><br>**Plaintiff.**<br><br>**v.**<br><br>**THE MILL STEEL COMPANY, MILL STEEL BIRMINGHAM, LLC and MSSES HOLDINGS, LLC**<br><br>**Defendants.** | **ADV. PROC. NO. 15-_________** |

**ADVERSARY COMPLAINT FOR A DECLARATORY JUDGMENT TO DETERMINE THE VALIDITY, EXTENT AND PRIORITY OF LIENS AND DISALLOW THE PROOF OF CLAIM OF MSSES HOLDINGS, LLC**

NOW INTO COURT, through undersigned counsel, come, J. Lester Alexander, III, the duly appointed and acting trustee (the "Trustee") of Southeastern Stud and Components, Inc. (the "Debtor") and, upon information and belief, files this Adversary Complaint for a Declaratory Judgment to Determine the Validity, Extent and Priority of any Liens:

## OVERVIEW

Defendants, The Mill Steel, Mill Steel Birmingham, LLC and MSSES Holdings, LLC, assert that one or more of them is owed in excess of $2,000,000 by the Debtor, and that debt is

secured by a first priority security interest and UCC-1 encumbering all or substantially all of the Debtor's assets including nearly One Million Dollars ($1,000,000.00) in cash, together with accounts receivable, work in progress and inventory. Defendants have filed a Motion for Relief from Stay in which they request that they be permitted immediately to take possession of all of their purported collateral, including all of the estate's cash. Defendants further request that they be granted and paid an administrative expense claim as reimbursement for funds used by the Trustee to provide security at the Debtor's former facility.

The Trustee brings this Adversary Proceeding seeking a declaratory judgment that Defendants do not hold a valid debt owed by the Debtor nor any security for that debt. Any indebtedness owed to Defendants by the Debtor as of June 5, 2013 was satisfied by an agreement between the Debtor and Mill Steel. At the same time, all security agreements and liens granted by the Debtor to Mill Steel were terminated. While one or more of the Defendants may have obtained and recorded security agreements from the Debtor since June, 2013, these agreements do not secure any debt.

The Trustee's preliminary investigation of the assets and liabilities of the Debtor reveals that since June 2013, the Debtors likely have not been indebted to Defendants in any amount and, in particular, the Debtor owed nothing to these Defendants as of the date it filed its Petition for Reorganization.

At this time, the Trustee has no funds to pay the significant and escalating costs of administering this estate. Accordingly, he requests that this Adversary Proceeding be conducted on an expedited schedule with an early trial date. He further requests that following trial, the Court enter judgment (i) declaring the Debtor is not indebted to any of the Defendants; (ii) declaring that none of the Defendants hold a secured claim against the Debtor; (iii) declaring

that the Trustee is free to use or dispose of the Debtor's assets subject only to restrictions contained in the Bankruptcy Code or as may be ordered by the Court; (iv) directing that Defendants' deliver to the Trustee, the "Inventory" as that term is defined below; and (v) disallowing the proof of claim filed by Defendant, MSSES Holdings.

## JURISDICTION AND VENUE

1.

This Adversary Proceeding is brought pursuant to Rules of Bankruptcy 7001(2) and 7001(9), and seeks a judgment from this Court determining the validity, priority and extent of any liens or encumbrances on any assets of the Debtor, held by defendants The Mill Steel Company ("Mill Steel"), Mill Steel Birmingham, LLC ("Mill Steel Birmingham") and MSSES Holdings, LLC ("MSSES" and, collectively, with Mill Steel and Mill Steel Birmingham, the "Defendants").

2.

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and the standing General Order of Reference to the Bankruptcy Court in the Middle District of Alabama, entered by the United States District Court for the Middle District of Alabama, pursuant to 28 U.S.C. § 157(a). This action is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.

Venue of this Adversary Proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

4.

J. Lester Alexander, III is the duly appointed and acting Chapter 7 Trustee of the estate of the above-captioned Debtor. He brings this Adversary Proceeding pursuant to the powers granted to him by the United States Bankruptcy Code and, in particular, 11 U.S.C. §704 and 11 U.S.C. §544.

5.

Mill Steel is, upon information and belief, a corporation organized and existing under the laws of the State of Michigan with its principal place of business in the City of Grand Rapids, State of Michigan.

6.

Mill Steel Birmingham is, upon information and belief, a limited liability company organized and existing under the laws of the State of Michigan with its principal place of business in the City of Grand Rapids, State of Michigan.

7.

MSSES Holdings is, upon information and belief, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in the city of Grand Rapids, State of Michigan. MSSES is either under the control of or an affiliate of Mill Steel and/or Mill Steel Birmingham. According to pleadings they have filed with this Court, Mill Steel and Mill Steel Birmingham have assigned to MSSES indebtedness owed to them by the Debtor and any security devices and collateral securing payment of that indebtedness.

8.

Defendants claim to be creditors of the Debtor. Notably, Defendants have filed a Motion for Relief from Stay (Docket No. 185), wherein they allege, among other things, that MSSES has a validly perfected lien on "all of Debtor's assets" and that, as of the Petition Date, "the indebtedness ... owing by Debtor ... was $2,178,814.24." Docket No. 185 ¶¶ 8, 12. Furthermore, Defendant MSSES has filed a secured proof of claim against the Debtor alleging that it holds a valid secured claim against the Debtor's assets in the amount of $2,178,814.24 based on its alleged lien. *See* Claim No. 21-1. Upon information and belief, MSSES claims that the security interests and debts held by it were assigned to MSSES by Mill Steel and Mill Steel Birmingham.

**PROCEDURAL BACKGROUND**

9.

On October 24, 2014, the Debtor filed with this Court its Voluntary Petition for Reorganization under Chapter 11 of the United States Bankruptcy Code ("Petition Date").

10.

On December 4, 2014, this Court issued an order appointing J. Lester Alexander, III as the Chapter 11 Trustee of the Debtor. Thereafter, the Trustee determined that the Debtor could not be reorganized as an operating entity, and he requested that the Debtor's Chapter 11 case be converted to a case under Chapter 7 of the Bankruptcy Code.

11.

On January 27, 2015, an order was entered converting the Debtor's case from Chapter 11 to Chapter 7. On the same day, the Court appointed J. Lester Alexander, III as the Debtor's interim Chapter 7 Trustee. Thereafter, and following the meeting conducted pursuant to 11

U.S.C. § 341, the Trustee became the permanent Trustee of the Debtor pursuant to 11 U.S.C. § 702(d).

12.

On January 21, 2015, MSSES filed a proof of claim, designated as claim number 21, (the "MSSES Claim") against the Debtor alleging that it holds a valid secured claim against the Debtor in the amount of $2,178,814.24.

13.

On January 22, 2015, Defendants filed their Motion for Relief from Stay alleging that MSSES has a validly perfected lien on certain of the Debtor's assets, and requesting, *inter alia*, that the automatic stay of 11 U.S.C. § 362 be modified to permit Defendants to take possession of or otherwise dispose of those assets. The hearing on the Motion for Relief from Stay has been continued without date.

14.

Thereafter, Defendants filed a Motion for Allowance and Payment Expense (the "Administrative Expense Motion") in which they alleged, *inter alia*, that all of the Debtor's cash is encumbered by a security agreement and UCC-1 in favor of one or more of the Defendants; that the Trustee used certain of that cash to pay for securing and policing the Debtor's facility and Defendants are entitled to be repaid all sums paid out by the Trustee to secure and police the facility.

15.

Since Defendants' filing of the Motion for Relief from Stay, the Trustee, through his counsel, has repeatedly requested that Defendants produce evidence to support their allegation that the Debtor is obligated to MSSES in the amount of $2,178,814.24 and that the Debtor's

purported debt to Defendants (now purportedly assigned to MSSES) is secured by validly perfected security interests in all of the Debtor's cash, accounts receivable, proceeds, inventory and certain other assets (sometimes referred to collectively as the "Claimed Collateral"). Defendants have not produced any evidence supporting their claimed security interests nor showing that the Debtor is indebted to MSSES or any of the other Defendants in any amount.

16.

As of the filing of this Complaint, there is approximately Nine Hundred Fifteen Thousand and no/100 ($915,000.00) Dollars on deposit in the Debtor's bank account. The Trustee has no funds with which to pay the significant and escalating costs of administering the Debtor's estate. Because of the Defendants' allegations concerning their purported liens, as set forth in the Motion for Relief from Stay and MSSES's proof of claim, the Trustee is barred by Section 363 of the Bankruptcy Code, from using funds on deposit in the Debtor's bank accounts absent (i) a judgment from this Court that Defendants' do not hold a valid lien on the Claimed Collateral or (ii) an order approving the Trustee's use of the Claimed Collateral.

17.

By agreement of the Trustee and the Defendants, on February 12, 2015, the Court entered an order which provides, *inter alia*, Defendants could take possession of all steel pieces, work in progress and like inventory (collectively the "Inventory") stored at the Debtor's former business facility. Defendants were further authorized to transport the Inventory to a facility selected by Defendants, and hold the Inventory pending further order of the Court. The Trustee has been apprised that Defendants have taken possession of the Inventory.

## FACTUAL BACKGROUND

18.

The Debtor's principle business was the design and fabrication of steel studs and related steel components. Until late May or early June, 2013, Mill Steel and Mill Steel Birmingham supplied flat-rolled carbon steel to the Debtor which the Debtor used in the ordinary course of its business.

19.

In order to secure its obligation to pay for product supplied to it by Mill Steel prior to May, 2013, the Debtor had entered into various agreements with Mill Steel which purported to grant to Mill Steel security interests in various assets of the Debtor. For example, on February 10, 2011, Mill Steel, Sterling Bank of Montgomery and the Debtor executed a certain Deposit Account Control Agreement (the "DACA") by which the Debtor purported to grant to Mill Steel a security interest in and encumbrance upon the deposit accounts maintained by the Debtor at Sterling Bank.

20.

As of May 2013, the Debtor was indebted to Mill Steel and Mill Steel Birmingham for inventory of raw steel which they had sold on credit to the Debtor. The Debtor, Mill Steel and Mill Steel Birmingham (among others) agreed to a reorganization of the Debtor's indebtedness, which included the complete satisfaction of the Debtor's indebtedness to Mill Steel and Mill Steel Birmingham and the release of all security interests and liens granted by the Debtor to Mill Steel and Mill Steel Birmingham.

21.

In May 2013, the Debtor entered into a sale-leaseback transaction with Utica Leaseco, LLC ("Utica"), whereby the Debtor (among other related entities) sold certain of its equipment to Utica and leased it back. The Debtor used its share of the proceeds of the sale-leaseback transaction to satisfy its then-existing indebtedness to Mill Steel and Mill Steel Birmingham.

22.

On June 5, 2013, the Debtor (among other related entities) entered into a "Payoff Letter and Indemnification Agreement" with Mill Steel and Mill Steel Birmingham (the "Payoff Letter"). Pursuant to the Payoff Letter, a copy of which is attached hereto and made a part hereof as Exhibit A, Mill Steel and Mill Steel Birmingham confirmed that, upon their receipt of $3,092,440.15:

> (i) any and all amounts outstanding (including principal, interest, expenses and fees) in connection with the subject indebtedness [owing from the Debtor to Mill Steel or Mill Steel Birmingham] will be deemed paid-in-full; (ii) any and all commitments and other obligations of [Mill Steel, Mill Steel Birmingham and the Debtor] in connection with the subject indebtedness shall terminate; (iii) **any security interests and liens granted to [Mill Steel or Mill Steel Birmingham] in all collateral of [the Debtor] with respect to the subject indebtedness shall automatically be deemed to be fully released, satisfied and discharged without further action (all without recourse to [Mill Steel or Mill Steel Birmingham])**; (iv) all other obligations of [the Debtor] with respect to the subject indebtedness shall be deemed to be fully released, satisfied and discharged without further action; and (v) **all loan documentation pertaining to the subject indebtedness shall be terminated and have no further force or effect. [emphasis supplied]**

23.

A payment in the amount of $3,092,440.15 was made to Mill Steel and Mill Steel Birmingham in accordance with the terms of the Payoff Letter (the "Payoff"). Accordingly, the Payoff Letter's release provisions set forth above in (i) through (v) became effective; any indebtedness owed by the Debtor to Mill Steel or Mill Steel Birmingham was deemed satisfied

and all security interest granted by the Debtor to Mill Steel and Mill Steel Birmingham were fully released, satisfied and discharged.

24.

Pursuant to and consistent with the Pay Off Letter, on or about June 5, 2013, the DACA was "terminated" and became of "no further force or effect."

25.

Immediately following the Payoff, the Debtor stopped using Mill Steel and Mill Steel Birmingham as its suppliers of flat-rolled carbon steel. Instead, the Debtor purchased its steel supplies from Steel Plus Solutions, LLC ("Steel Plus"). The purchase orders issued by the Debtor for steel were issued to Steel Plus, and the invoices for those purchases were issued by Steel Plus to the Debtor. As the Debtor no longer ordered steel from Mill Steel or Mill Steel Birmingham, the Debtor did not incur any indebtedness to either of these entities.

26.

On or about October 23, 2013, Mill Steel, Mill Steel Birmingham, the Debtor and various affiliates of the Debtor executed a Credit and Security Agreement which purported to grant to Mill Steel and Mill Steel Birmingham a security interest in certain assets of the Debtor including the Claimed Collateral to secure payment of indebtedness owed by the Debtor to Mill Steel and/or Mill Steel Birmingham. At the same time, a UCC-1 was filed with the Secretary of State of the State of Alabama to evidence that purported security interest.

27.

Based on the Trustee's review of the Debtor's records, after the Payoff and the Debtor's satisfaction of any and all indebtedness due and owing to Mill Steel and Mill Steel Birmingham, the Debtor did not incur any indebtedness to Mill Steel or Mill Steel Birmingham and the

allegations set forth in the Motion for Relief from Stay and MSSES's proof of claim regarding the indebtedness owed by the Debtor are patently incorrect.

28.

Therefore, even if the security documents attached to Defendants' Motion for Relief from Stay and MSSES's proof of claim may be read to create valid and perfected security interests under applicable law—which the Trustee disputes— as of October 23, 2013 there was simply no indebtedness owed by the Debtor to be secured. Furthermore, the Debtor did not incur any indebtedness to Defendants following execution of those documents. And, most importantly, no indebtedness was owed by the Debtor to Mill Steel and Mill Steel Birmingham (or MSSES, their purported assignee) as of the date of the filing of the Debtor's Chapter 11 petition. Thus, Defendants do not have a valid security interests in any of the Debtor's assets.

## COUNT I
## FOR A DECLARATORY JUDGMENT CONCERNING LIENS AND SECURITY INTERESTS

29.

The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 28, above as if fully set forth herein.

30.

According to Defendants' Motion to Lift Stay and MSSES's proof of claim, Defendants allege that they have a valid and perfected lien on all of the Claimed Collateral. As discussed above, the Debtor's records do not support that allegation and the Trustee denies that any of the Defendants hold a valid and enforceable security interest encumbering any of the Claimed Collateral. Thus, an actual, substantial and justiciable controversy exists between Trustee and

Defendants. That controversy warrants the issuance of a declaratory judgment that Defendants do not have a valid, perfected lien on or security interest in any of the Claimed Collateral.

31.

Defendants have not proven the validity, priority or extent of their liens. Yet the Trustee is still unable to use the assets that Defendants assert are subject to their liens. This Court should issue a judgment declaring that Defendants do not have a valid and perfected lien in any of Debtor's assets.

**COUNT II**
**OBJECTION TO PROOF OF CLAIM**

32.

The Trustee repeats and realleges the allegations contained in Paragraphs 1 through 31, above as if fully set forth herein.

33.

MSSES is not owed any amounts by the Debtor and it does not have a valid security interest in any of the Debtor's assets. Accordingly, the Court should enter a judgment disallowing the proof of claim of MSSES.

WHEREFORE, J. Lester Alexander III, Trustee prays that this Court enter a Judgment (i) declaring that the Debtor's assets are not subject to any liens or security interests in favor of Defendants; (ii) declaring that Trustee is allowed to make use of the Claimed Collateral, subject only to this Court's approval as required by the Bankruptcy Code; (iii) directing that Defendants deliver the Inventory to the Trustee or such other person as may be designated by the Trustee;

and (iv) granting Trustee such other and further relief as the Court deems just, proper and equitable, including any costs and expenses of this Adversary Proceeding.

Respectfully submitted,

**FISHMAN HAYGOOD PHELPS WALMSLEY WILLIS & SWANSON LLP**

BY: /s/ Brent B. Barriere
    Brent B. Barriere (*pro hac vice*)
    D. Skylar Rosenbloom (*pro hac vice*)
    Timothy S. Mehok (*pro hac vice*)
    201 St. Charles Avenue, Suite 4600
    New Orleans, LA 70170
    Tel: 504-586-5252
    Fax: 504-586-5250
    Email: bbarriere@fishmanhaygood.com
    srosenbloom@fishmanhaygood.com
    tmehok@fishmanhaygood.com

-and-

William Dennis Schilling
Attorney at Law
P. O. Box 55147
Birmingham, AL 35255
Telephone: 205-328-0464
Fax: 205-328-6996
Email: wdschilling@bham.rr.com

**COUNSEL FOR J. LESTER ALEXANDER, III, IN HIS CAPACITY AS THE CHAPTER 7 TRUSTEE OF SOUTHEASTERN STUD AND COMPONENTS, INC.**