## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:                                          Case No. 14-32906-DHW
                                                Chapter 7
SOUTHEASTERN STUD AND
COMPONENTS, INC.,

     Debtor.

_____

J. LESTER ALEXANDER, III,

     Plaintiff,

v.                                              Adv. Proc. 15-03014

THE MILL STEEL COMPANY,
MILL STEEL BIRMINGHAM, LLC, and
MSSES HOLDINGS, LLC,

     Defendants.


## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

     In this complaint, J. Lester Alexander, III (hereinafter "trustee"), the chapter 7 trustee for the bankruptcy estate of Southeastern Stud and Components, Inc. (hereinafter "debtor"), contests the security interests of the Mill Steel Company, Mill Steel Birmingham, LLC, and MSSES Holdings, LLC (hereinafter "defendants")[1] in the assets of the debtor (Count I), and objects to the claim of the defendants (Count II). Now before the court are the parties' respective motions for summary judgment.[2] For the following reasons, the trustee's motion for summary judgment and his

_____

[1] Mill Steel Company and Mill Steel Birmingham, LLC appear to be interchangeable in this proceeding. Mill Steel Birmingham, LLC seems to be an arm of Mill Steel Company. MSSES Holdings, LLC is the assignee of Mill Steel Company's debt against the debtor and the security interest encumbering that debt.

[2] The trustee's motion for summary judgment was filed on October 12, 2015 (Doc. #142). On that same date, the trustee filed a motion for partial summary judgment (Doc. #143) focusing solely the debtor's bank accounts at Sterling Bank. On October 13, 2015, the defendants filed their motion for summary judgment (Doc. #145).

motion for partial summary judgment will be denied, and the defendants' motion for summary judgment will also be denied.

## Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the Bankruptcy Court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, the parties agree that the matters raised in this dispute are core proceedings pursuant to 11 U.S.C. § 157. Hence, this court's jurisdiction extends to the entry of a final order or judgment.

## Summary Judgment Standard

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## The Parties' Contentions

In the view of the undersigned, the parties' dispute can be boiled-down to two components, each with sub-parts. First, the trustee contends that the debtor does not owe a debt to the defendants. Instead, the trustee maintains that the claim filed by the defendants is actually for a debt owing to Steel Plus Solutions, LLC (hereinafter "SPS"). By extension, because the defendants are not a creditor of the debtor, value

has not been given. Therefore, the defendants' security interest, according to the trustee, does not attach.

The defendants, however, contend that SPS, in its transactions with the debtor, was either the defendants' agent or the defendants' delegatee. While duties of performance under a contract may be accomplished by an obligor's agent or duties of performance may be delegated to a delegatee, the duty of counter performance remains to the principal or delegator. Therefore, in the defendants' view, the debtor's debt is owed to them not SPS.

The second component of this dispute centers on the debtor's bank accounts at Sterling Bank. Those accounts at one time were subject to a Deposit Account Control Agreement (hereinafter "DACA") between the defendants and the debtor. The trustee argues that the DACA does not give the defendants an interest in the debtor's accounts at Sterling Bank. First, trustee contends that the DACA was cancelled in the summer of 2013 when the original debt owing to Mill Steel was paid off. Secondly, the trustee maintains the bank account numbers listed in the DACA were not the same as the account numbers for the accounts actually maintained by the debtor at Sterling Bank. As a result, the trustee contends that accounts cannot be covered under the defendants' security agreement pursuant to Alabama law.

The defendants counter maintaining that the DACA was ratified by the debtor after the pay-off of the original debt and that the discrepancy in the account numbers was of the making of the debtor and Sterling Bank without the knowledge of the defendants. In addition, the defendants contend that the DACA was an agreement between the debtor, the defendants, and Sterling Bank. All of the parties to that agreement were aware that the DACA applied to the accounts actually maintained by the debtor even though those accounts had numbers that differed from the account numbers identified in the agreement. Further, the defendants contend, that even if the court finds the DACA invalid, the funds contained in the debtor's bank accounts are derived from the sale of its collateral and are traceable thereto. Therefore, according to the defendants, the funds in the debtor's deposit accounts at Sterling Bank are covered by their perfected security interest.

## Legal Conclusions

I.  Does the debtor owe a debt to the defendants?

The trustee points to parts of the record for the proposition that the steel provided to the debtor was purchased from SPS and that each sale was invoiced by

SPS. In addition, the debtor routinely paid SPS for those purchases.

The defendants, however, counter that SPS was its agent or delegatee with regard to its transactions with the debtor. They point to parts of the record in support of that contention such as a) while the debtor remitted payment to SPS, those funds ultimately made their way to the defendants, b) that in numerous e-mail communications between the debtor and the defendants, the debtor's principal and employees acknowledge that the defendants were the actual creditor, c) that in the fall of 2013, the debtor actually entered into a Credit and Supply Agreement with the defendants wherein the defendants were the supplier of steel on credit, and wherein the debtor gave the defendants a security interest in its assets to secure that indebtedness, and d) that each time SPS shipped steel to the debtor, it sought and received prior approval from the defendants.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). Whether the debtor owes the defendants turns on whether SPS was the agent or delegatee of the defendants. That determination is particularly fact centric. While neither party disputes the facts relied upon by the other, this court must refrain from weighing the evidence until that evidence is presented as a whole at trial.[3] Therefore, summary judgment should be denied regarding whether a debt is owed to defendants.

II. Is the defendants' security interest valid with respect to the debtor's property (other than deposit accounts at Sterling Bank)?

The trustee contends that because the defendants are owed nothing by the debtor, they have not given value, a requisite in order for their security interest to attach. The Alabama law provides:

---

[3]The court has the impression that neither party disputes the facts relied upon by the other. Seemingly, their disagreement appears to be the legal result to which those facts lead. This is often referred to as a mixed question of fact and law. At the hearing, the court inquired of both sides regarding whether a trial would produce additional corroborative evidence for either. If not, this dispute, may be ripe for summary judgment in spite of the Supreme Court's admonition about a judge weighing the evidence at the summary judgment stage. Yet, the trustee, through counsel, expressed concern that he be given an opportunity to test the evidence at trial, particularly through cross examination of witnesses.

"[A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
(1) *value has been given;*
(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
(3) one of the following conditions is met:
...."

Ala. Code § 7-9A-203(b) (emphasis added).

Because the trustee asserts that nothing is owed by the debtor to the defendants, value has not been given. The court, however, has denied summary judgment on the issue of the trustee's objection to the defendants' claim. By extension, summary judgment must be denied on this issue as well.

III. Is the DACA between the debtor, the defendants and Sterling Bank invalid

A) as a result of its being cancelled with the payoff of the debtor's original debt to the defendants in June 2013?

The parties do not dispute that the original debt owed by the debtor to the defendants was paid off and that the defendants were obligated thereafter to release all encumbrances against the debtor. The question of whether the debtor ratified the DACA for post payoff transactions is clearly one of fact. As with the issue of whether there is debt owing at all to the defendants, the parties seemingly do not dispute the record facts, however, they do dispute the legal conclusion to which those facts lead. That question is best answered following trial when the parties have the opportunity to offer additional evidence or to test the others evidence through cross examination; thus, summary judgment must be denied as to this issue.

B) so as to render the defendants security interest in the debtor's deposit accounts at Sterling Bank unenforceable?

In trustee's motion for partial summary judgment, he points to Alabama law on this issue. First, the trustee cites the court to Ala. Code § 7-9A-203(b)(1)(D). That section of the Code provides that "a security interest is enforceable against the debtor and third parties with respect to [deposit account] only if ... the secured party has control under ... 7-9A-104 ... pursuant to the debtor's security agreement." Next, the trustee turns to § 7-9A-104 which provides "[a] secured party has control of a deposit account if ... the debtor, secured party, and bank have agreed in an

authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor." *See* Ala. Code § 7-9A-104(a)(2).

The trustee contends that in order to comply with § 7-9A-104 "a deposit account control agreement must specifically identify the debtor, bank and secured creditor and *the specific account(s) subject to the deposit account control under this section*." *See* trustee's Memorandum In Support Of Motion for Partial Summary Judgment, Doc. #143-8, p. 8 (emphasis added). The court, however, can find no provision of the law that would require the specific account to be identified in order for the creditor's security interest to attach to the account. Assuming that the court finds that the DACA had not been cancelled or if so, was thereafter ratified, the defendants had control of the debtor's deposit account as a result of the DACA. The record here clearly shows that the debtor and Sterling Bank were aware of the particular accounts to which the DACA applied, and the discrepancies between the account numbers contained in the DACA and those actually maintained by the debtor were of the making of the debtor and Sterling Bank and not of the defendants. Finally, through a search of the record, a third party would have found that the defendants claimed an interest in the debtor's deposit accounts. *See* Exhibits to Trustee's Motion for Summary Judgment (Doc. # 164), Exhibit D: defendants' October 2013 UCC Financing Statement ("The Financing Statement covers the following collateral: …all Deposit Accounts with any bank or other financial institution; …"). Charged with such knowledge, the third party would have at least been placed upon inquiry notice regarding the defendants' claimed security interest. That inquiry would have led the third party to the defendants, the debtor or to Sterling Bank. The overwhelming bulk of the record now before the court leads to the conclusion that none of the parties to the DACA would or could have denied the defendants' interest in the deposited funds. Therefore, the trustees' motion for partial summary judgment must be denied regarding the validity of the DACA.

IV. Even if the DACA is held to be invalid, does the defendants' security agreement encumber funds in the debtor's Sterling Bank accounts through the doctrine of tracing and apart from the provisions of §§ 7-9A-203 and 7-9A-104?

The defendants contend that the funds in the debtor's Sterling Bank accounts are subject to their security interest notwithstanding the Alabama law controlling deposit accounts (§§ 7-9A-203 and 7-9A-104). In particular, the defendants contend that they perfected their security interest in the debtor's inventory and accounts receivable in October 2013. Next, the defendants assume that the balance of those accounts, as of the security interest perfection date, were from non-collateral proceed

sources. Then, the defendants assume that any post-perfection deposit was derived from sale of its collateral or collection of accounts receivable in which it had an interest. Finally, the defendants submit that an analysis of the history of the debtor's accounts shows that, as of the date of bankruptcy, the balance of the funds within the debtor's bank accounts was derived from the sale of its collateral and the deposit of the proceeds of those sales. Using the doctrine of tracing, the defendants contend that their security interest attaches to those funds apart from the provisions of the law relating to deposit accounts. *See* § 7-9A-315; *Ex parte Alabama Mobile Homes, Inc.,* 468 So. 2d 156, 160 (Ala. 1985); *In re Delco Oil, Inc.,* 365 B.R. 246 (Bankr. M.D. Fla. 2007).

The flaw in the defendants' contention on this score is that they assume that all post-security interest perfection deposits were made from the proceeds of the debtor's sale of its collateral. While the court is persuaded as to the validity of the doctrine of tracing under Alabama law and recognizes that the doctrine provides an alternate method of holding a security interest in deposited funds apart from a DACA, the facts, here, are insufficient to lead to that result. Again, this is due to the mere assumption that the debtor made no deposits from other, non-proceed, sources. Hence, summary judgment must be denied as to this issue.

## Conclusion

For the foregoing reasons, it is

ORDERED that the trustee's motions for summary judgment (Doc. # 142) and partial summary judgment (Doc. # 143) are DENIED. It is further

ORDERED that the defendants' motion for summary judgment (Doc. # 145) is DENIED.

Done this the 1st day of December, 2015.

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Defendants
   J. Lester Alexander, Plaintiff/Trustee
   Brent B. Barriere, Attorney for Plaintiff
   D. Skylar Rosenbloom, Attorney for Plaintiff
   Michael L. Hall, Attorney for Defendants
   Brent D. Hitson, Attorney for Defendants