# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re:

Case No. 14-32906-DHW
Chapter 7

SOUTHEASTERN STUD AND
COMPONENTS, INC.,

　　　　Debtor.

---

J. LESTER ALEXANDER, III, TRUSTEE,

　　　　Plaintiff,

v.

Adv. Proc. 15-03014

THE MILL STEEL COMPANY, et al,

　　　　Defendants.

## MEMORANDUM OPINION

In this adversary proceeding, J. Lester Alexander, III, the chapter 7 trustee (hereinafter "trustee") for Southeastern Stud and Components, Inc. (hereinafter "debtor" or "SES") objects to the claim of Mill Steel Company, Mill Steel Birmingham, LLC, and MSSES Holdings, LLC (hereinafter collectively referred to as "Mill Steel"). Further, the trustee contests the validity of Mill Steel's security interest in property of the debtor and the effectiveness of the deposit account control agreement (hereinafter "DACA") between the debtor, Mill Steel, and Sterling Bank. Trial was held on January 19 and 20, 2016. For the following reasons, judgment will enter in favor of Mill Steel allowing its proof of claim, acknowledging the validity of its security interest in property of the debtor, and recognizing the validity of the DACA.

## Jurisdiction

The court's jurisdiction in this matter is derived from 28 U.S.C. § 1334 and from an order of The United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the bankruptcy court. *See* General Order of Reference [of] Bankruptcy Matters (M.D. Ala. April 25, 1985). Further, because the matters at issue here concern the allowance or disallowance of a claim against the estate and the determination of the validity, extent or priority of a lien, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K), thereby extending this court's jurisdiction to the entry of a final order or judgment .

# Findings of Fact

In early 2011, Mill Steel and the debtor entered into a financing/supply relationship whereby Mill Steel would supply flat-rolled carbon steel to the debtor. This agreement between the debtor and Mill Steel was memorialized by a Supply Agreement dated February 10, 2011 (2011 Agreement).[1] A UCC-1 Financing Statement was filed identifying Mill Steel as the secured creditor and the debtor as one of the debtors along with its affiliates. At the same time, the parties also entered into a Security Agreement and executed the DACA. The DACA related to the debtor's three bank accounts at Sterling Bank of Montgomery and gave Mill Steel the right to exercise control of those deposit accounts. However, the DACA identified account numbers that were never actually created or for which the account numbers changed over the years without the knowledge of Mill Steel. Nevertheless, the same three accounts were used throughout the parties' business relationship, and the accounts actually used by the debtor were considered by all the parties to be subject to the DACA.

From the beginning of the supply relationship and through June 5, 2013, Mill Steel sold and supplied steel to debtor under the 2011 Agreement through "Division B" of Mill Steel. Division B was responsible for Mill Steel's supply and sale of non-prime and excess prime steel. The invoices for these transactions contained the name of the Mill Steel Company.

On May 28, 2013, Mill Steel formed Excess Steel Solutions, LLC. The name was subsequently changed to Steel Plus Solutions, LLC ("SPS"). SPS was created by Mill Steel to continue the operations of Mill Steel's Division B under a new brand. This was done in order to distinguish Mill Steel's traditional trade of providing prime steel from its trading of non-prime/excess prime steel. SPS was treated as a continuation of Division B, and Mill Steel was at all times the sole member of SPS. SPS did not have separate facilities. Instead, all SPS transactions utilized Mill Steel's offices, warehouse space, technology information systems, metallurgists, certification labs, and administrative staff. The officers and directors of SPS also served as officers and directors for Mill Steel. Furthermore, SPS's financial statements and tax returns were kept as part of Mill Steel's consolidated financial statements and tax returns. SPS utilized Mill Steel's credit arrangement with JPMorgan Chase Bank in order to fund all purchases of steel. The Limited Liability Company Agreement of SPS does not prohibit Mill Steel and SPS from entering into a delegation or agency business relationship.

In June of 2013, Mill Steel and SPS entered into a Brokerage Partner Agreement with Paul Preston and his company, TPM Trading Inc. Preston was retained to serve as an independent contractor of SPS in order to aid in the purchase and sale of non-prime and excess prime steel. Mill Steel guaranteed Preston's payments under the Brokerage Agreement.

Also in June of 2013, the debtor borrowed funds from Utica Leasing Co. and paid off its indebtedness to Mill Steel under the 2011 Agreement. That payment was received by Mill

---

1 The Supply Agreement also included Dixieland Metals of Alabama, LLC, J&S Investments, LLC, and K2 Enterprises, LLC., all of which were the debtor's affiliates.

Steel on or before June 6, 2013, and the payoff was memorialized in a certain document titled "Satisfaction and Release of Credit Documents" dated June 6, 2013. The Satisfaction and Release stated that Mill Steel "hereby fully and absolutely releases all Released Parties from all the Credit Documents and all Credit Documents shall be deemed satisfied and paid in full." The Credit Documents were defined to include the DACA.

On the same day as the payoff, Eric Lambert, Mill Steel's CFO, sent an email to Kennon Whaley, the debtor's CEO, inquiring whether the debtor wanted to enter into a new credit agreement with Mill Steel. Whaley expressed a willingness to do so. Negotiations for the new credit and supply agreement began immediately and continued through October 23, 2013.

In further emails, Mill Steel advised the debtor that it would not release any steel to debtor until a new security agreement and UCC-1 were executed. On June 21, 2013, Mill Steel filed a UCC-1 Financing Statement identifying Mill Steel as the secured party and SES as the debtor. The UCC-1 financing statement identified the following collateral: "All Debtor's inventory, accounts and accounts receivable, whether now or hereafter existing, and including all proceeds, products, replacements or substitutions of the foregoing." SPS was not listed as a party to the UCC-1 statement.

On June 24, 2013 Lambert approved a release of steel requested by debtor. On the same day, Lambert replied to an email with the following:

> "Note – until a credit agreement is defined Chase is requiring Mill Steel to retain material under a Bailee agreement whereby SES has to release material prior [sic] its usage. I note Kennon would like to be able to use material and report it the following week's Monday. Chase will not allow this until we get a new CA defined. I don't think it should be that big of an issue."

A Bailee Waiver was executed identifying Mill Steel and SPS collectively as "Bailor" and debtor as "Bailee". Mill Steel and JPMorgan Chase Bank initiated the agreement in order to confirm that any steel shipped by SPS to the debtor was properly accounted for and protected. In addition to the Bailee Waiver, Mill Steel required debtor to submit weekly borrowing base reports. These reports itemized post-payoff accounts payable owing to Mill Steel as well as the value of debtor's accounts receivable and inventory.

Throughout the negotiation period, SPS supplied non-prime and excess prime steel to the debtor on a limited basis. All steel purchased and supplied by SPS post-payoff was purchased by funding through the Mill Steel credit agreement with JPMorgan Chase Bank. Both Mill Steel and SPS are parties to the agreement with JPMorgan Chase Bank; yet, JPMorgan Chase Bank only accepts funding requests from Mill Steel. Accordingly, all funding from the credit agreement is initially deposited into Mill Steel's operating account and subsequently disbursed at Mill Steel's direction. Thus, but for Mill Steel's funding, SPS had no ability to purchase steel.

Although funded by Mill Steel, all invoices to the debtor contained the SPS name instead of Mill Steel. Even though they bore the SPS name, all accounting records and certifications identifying SPS were generated by Mill Steel, using the Mill Steel system. All post-payoff certifications were supplied after Mill Steel's lab certified the specifications of the steel sold to debtor. The procurement and sale of push or non-push steel inventory to debtor were booked as transactions on SPS's financial statements in order to monitor the performance of that wholly-owned subsidiary and to calculate Paul Preston's compensation under the Brokerage Agreement. These financial statements were nevertheless incorporated into Mill Steel's consolidated financial statements.

During this time, all wire transfers made by debtor on account of the SPS invoices were remitted to Mill Steel's lockbox collection account with JPMorgan Chase. The payments were then swept by JPMorgan Chase, which in turn served to reduce debtor's indebtedness to Mill Steel.

Each week throughout this negotiation period, Mill Steel sent the debtor a weekly "Mill Steel Statement of Account" which Thornton (the debtor's employee) would reconcile and send a return borrowing base calculation to Mill Steel. Periodically, Mill Steel representatives visited the debtor's facility to confirm the status and amount of coils supplied to debtor through SPS.

On October 23, 2013, Mill Steel and the debtor finalized their negotiations and executed a Credit Agreement and a Supply Agreement (2013 Agreement) which incorporated the aforementioned Bailee Waiver in order to memorialize their new credit/supply financing relationship and secure certain collateral.[2] The 2013 Agreement was substantially similar to the pre-payoff 2011 Agreement. SPS is not listed as a party to the 2013 Agreement, but is mentioned in the incorporated Bailee Waiver.

On October 28, 2013, Mill Steel filed another UCC-1 Financing Statement identifying Mill Steel as the secured party and SES as the debtor along with a complete description of the collateral. SPS is not listed as a secured creditor on the October UCC-1.

---

[2] The 2013 Agreement specifically included the following collateral: "[A]ll of each debtor's assets, including without limitation all of the following: Inventory and Receivable, whether now owned by or owing to, or hereafter acquired by or arising in favor of, Debtor and whether owned or consigned by or to, or leased from or to, Debtor and regardless of where located; all proceeds of the foregoing; all equipment; all General Intangibles, including without limitation copyrights, patents, trademarks, trade secrets, proprietary systems and data and other intellectual property (including, without limitation, all Scheduled Intellectual Property); all Deposit Accounts with any bank or other financial institution; all Fixtures, and all accessions to, substitutions for and replacements, proceeds, insurance proceeds and products of the foregoing, together with all books and records, customer lists, credit files, computer files, programs, printouts and other computer materials and records related thereto, and any other collateral for the Obligations pursuant to the Credit Documents at any time by any Debtor or Guarantor."

Following the 2013 Agreement, Paige Siker, an employee of the debtor, sent an email to Preston titled "New deal with Mill Steel." Therein, Siker asked whether or not the debtor should continue issuing purchase orders listing SPS as the vendor as was done during the negotiation period. Preston responded that SPS should continue to be listed as the vendor. That same day, Lambert (CFO of Mill Steel) sent Whaley an email, entitled "Interchangeable with Credit/Supply Agreements" in which he wrote:

> "Kennon,
> I trust we are both in agreement that Mill Steel Co. is the same as Steel Plus Solutions and Steel Plus Solutions is the same as Mill Steel Co.?
> Kindly confirm.
> Eric Lambert."

The same day, Whaley replied:

> "We are in agreement. ..."

On August 8, 2014, Whaley sent an email to Lambert in which he outlined various defaults of the debtor under the 2013 Agreement and proposed a forbearance agreement to cure the defaults. On August 10, 2014, Whaley sent another email offering to wire at least $750,000 to Mill Steel to reduce the debt owed pursuant to the 2013 Agreement. The next day, the debtor wired a payment in the amount of $865,159.10 to Mill Steel relating to the past-due SPS invoices. In connection with that payment, Whaley sent the following email:

> "Eric
> Per our agreement yesterday:
> I was able to wire the full amount to bring Mill Steel current. Nancy has sent the wire confirmation to Alex.
> Please release steel and we will resume normal operations.
> Thanks for your patience.
> Kennon."

On October 6, 2014, Mill Steel notified Sterling Bank that it was exercising its rights under the DACA and demanded that monies in those accounts be remitted to it. While Sterling Bank placed a hold on the debtor's accounts, it had not remitted those funds to Mill Steel prior to the debtor's filing for bankruptcy relief. With regard to debtor's Sterling Accounts, Mill Steel's "Appendix A" (attached) makes an analysis of the accounts detailing the deposits and withdrawals. *See* Appendix A. The chart catalogs all transactions between September 21, 2014 and September 30, 2015 and results in a finding that all funds in the debtor's operating Sterling Account are identifiable proceeds from the sale of Mill Steel's collateral.[3]

---

[3] To the extent that funds deposited into this account relate to the sale of inventory generating accounts receivable (which serve as Mill Steel's collateral), the chart reflects that these funds increased the "Proceeds

On October 24, 2014, the debtor filed this bankruptcy proceeding under chapter 11. On December 4, 2014, J. Lester Alexander was appointed as trustee of debtor's Chapter 11 estate. Thereafter, the trustee moved for the conversion of the case to one under chapter 7. On January 27, 2015, this court granted the trustee's motion and converted the case. J. Lester Alexander was appointed as trustee for the chapter 7 estate as well.

On January 21, 2015, Mill Steel filed a proof of claim (Claim 21) in the underlying bankruptcy proceeding in the amount of $2,178,814.24.

## Conclusions of Law

### I. Does the debtor owe a debt to Mill Steel?

The trustee contends that the payoff and release satisfied all debts to Mill Steel and that, post-payoff, all steel supplied to the debtor was provided and invoiced by SPS. Thus, the trustee maintains that it is SPS that is owed a debt and not Mill Steel. Mill Steel, however, contends that SPS supplied steel to the debtor as a delegatee or agent of Mill Steel and that the debt is owed to Mill Steel as a result of that relationship.

Under Alabama law, a party may generally perform its duties under a contract through a delegate. Alabama law provides that:

> "(1) A party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract. No delegation of performance relieves the party delegating of any duty to perform or any liability for breach."

Ala. Code § 7-2-210. Absent a contractual provision to the contrary, a duty can be delegable without the consent of the buyer. *See Buckeye Ag-Ctr., Inc. v. Babchuk*, 533 N.E.2d 179, 180 (Ind. Ct. App. 1989).

In the view of the undersigned, the evidence supports Mill Steel's contention that SPS was its delegate under the contract with the debtor. The evidence shows that SPS sought authorization from Mill Steel prior to any purchase or supply arrangement with the debtor. Further, all payments made by the debtor on account of SPS invoices were remitted to Mill Steel's lockbox account at JPMorgan Chase Bank. Those payments were applied to reduce the debtor's indebtedness owing to Mill Steel under the 2013 Agreement. Finally, the

---

Portion of Balance." To the extent that funds deposited into this account do not relate to accounts receivable or inventory of the Debtor, the chart reflects that the deposit of these funds increased the "Non-Proceeds Portion of Balance," the amount of which does not constitute identifiable proceeds of Mill Steel's collateral.

debtor's own actions, which are tantamount to admissions, show that its contract was with Mill Steel and not SPS. In particular:

1) The credit agreement itself and UCC financing statements signed by debtor which specifically name Mill Steel despite the trustee's argument that debtor only dealt with SPS;
2) Numerous emails in which the debtor acknowledged a debt owing to Mill Steel, and that the amounts of the SPS invoices increased the debtor's indebtedness under the "New Deal with Mill Steel";
3) The "Mill Steel Statements of Account" and borrowing base reports drafted by the debtor and delivered to Mill Steel reflecting accounts payable owing to Mill Steel arising out of SPS invoices; and
4) The negotiations between the parties to enter into a forbearance agreement relating to the supply and credit agreements for the purpose of curing payment and other defaults arising out of the SPS invoices.

The evidence at hand provides ample grounds for concluding that SPS was a delegate of Mill Steel in the transaction with the debtor.

The court need not address the issue of agency having found that SPS was Mill Steel's delegate under the contract with the debtor. Nonetheless, the court concludes that even if SPS was not Mill Steel's delegate, it was Mill Steel's agent.

Under Alabama law, the test to be applied to determine whether an agency relationship exists is whether the principal has the right of control over the actions of the alleged agent. *In re Heinz*, 501 B.R. 746, 759 (Bankr. N.D. Ala. 2013), as amended (Nov. 12, 2013); *see also St. Clair Intermediate School Dist. v. Intermediate Ed. Ass'n/MEA*, 458 Mich. 540, 557-58, 581 N.W.2d 707 (1998); 3 C.J.S. Agency § 594 ("Evidence of the principal's control of the agent and the agent's activities can be indicative of an agency relationship, when considered under all the relevant circumstances, and while the level of control may be very attenuated with respect to details, in contrast with the control an employer exercises over an employee, evidence should establish that the principal has ultimate control as may involve prescribing the agent's obligations or duties before or after the agent acts."). Here, Mill Steel had control over its wholly owned subsidiary, SPS, as primarily evidenced by the requirement that SPS gain Mill Steel's authorization prior to any purchase or supply of steel to the debtor. Beyond requiring Mill Steel's authorization, the evidence reveals that SPS was completely dependent on Mill Steel. SPS did not have separate facilities. All SPS transactions utilized Mill Steel's offices, warehouse space, technology information systems, metallurgists, certification labs, and administrative staff. The officers and directors of SPS also served as officers and directors for Mill Steel. SPS's financial statements and tax returns were kept as part of Mill Steel's consolidated financial statements and tax returns. Essentially, SPS operated under the very thumb of Mill Steel. Thus, the SPS was Mill Steel's agent with regard to Mill Steel's contract with the debtor.

Because SPS was merely Mill Steel's delegate or agent under the contract with the debtor, the debtor's debt is owed to Mill Steel.

## II.   Does Mill Steel hold a valid and perfected security interest in the collateral?

The trustee's position here hinges on his first contention that there is no debt owed to Mill Steel. Specifically, the trustee contends that because there was no debt to Mill Steel, that value has not been provided, and that value must be given before a security interest will attach. Having decided that a debt is owed to Mill Steel, in the view of the undersigned, Mill Still also has a valid and perfected security interest in the collateral.

The Alabama law provides:

"[A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
    (1) value has been given;
    (2) the debtor has rights in the collateral or the power to transfer
        rights in the collateral to a secured party; and
    (3) one of the following conditions is met:
        (A) the debtor has authenticated a security agreement that provides a
        description of the collateral. ...
        ...
        ...
        (D) the collateral is deposit accounts ... and the secured party has control
        under ... 7-9A-104 pursuant to the debtor's security agreement."

Ala. Code § 7-9A-203(b).

Mill Steel extended "value."[4]  By executing the 2013 Agreement, Mill Steel effected a "binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon. ...".  *See* Ala. Code 7-1-204(1).  Specifically, the terms of the 2013 Agreement provided the debtor with credit, extended by Mill Steel, in the amount of $1,500,000.00 for the purpose of allowing the debtor and others to finance the purchase of steel from Mill Steel.  Moreover, the 2013 Agreement also provides that "as of October 18, 2013, the principal balance of the Credit Facility equals $1,056,593.74 (the "Existing Balance").  Regardless of the date or dates incurred, the Existing Balance shall become subject to all the terms of this Agreement as of the date hereof. ... For the sake of clarity, the outstanding balance of the Existing Balance shall be included in all calculations to determine

---

[4]   Ala. Code §7-1-204(1) defines "value" as follows:
"Except as otherwise provided in Articles 3, 4, and 5, a person gives value for rights if the person acquires them: (1) In return for a binding commitment to extend credit or for the extension of immediately available credit, whether or not drawn upon and whether or not a charge-back is provided for in the event of difficulties in collection."

Current Availability under the Agreement." Accordingly, the "value" requirement of §7-9A-203(b) subsection 1 is satisfied.

It is undisputed that debtor owns the collateral. Debtor executed the 2013 Agreement, which provides that debtor has rights to the property serving as "Collateral" for purposes of the 2013 Agreement. Moreover, Article II of the 2013 Agreement provides that "[e]ach debtor hereby pledges, assigns and grants to Mill Steel a security interest in all of debtor's rights, title and interest in, to and under the Collateral to secure the prompt and complete payment and performance of the Obligations." Therefore, subsections (2) and (3) of §7-9A-203(b) are satisfied as well. The court concludes that Mill Steel has a valid and perfected security interest in the collateral belonging to the debtor.

### III. Is the DACA between the debtor, Mill Steel and Sterling Bank invalid

#### a. as a result of its being satisfied and released with the payoff of the debtor's original debt to Mill Steel in June 2013?

The parties do not dispute that the original debt owed by the debtor to Mill Steel was paid off and that Mill Steel was obligated thereafter to release all encumbrances against the debtor. The trustee contends that the DACA was terminated by operation of the Payoff Letter and the Satisfaction and Release and that the debtor was obligated to provide a new deposit account control agreement only if requested by Mill Steel. However, Mill Steel contends that the DACA was either not terminated or was ratified as a result of the parties' actions and negotiations post-payoff. After a review of the record, the undersigned finds that the DACA was ratified by the debtor.

In the undersigned's view, the payoff of the debt to Mill Steel did in fact terminate the DACA. Nevertheless, negotiations for a new supply/credit relationship with terms similar to those of the 2011 Agreement began immediately after the payoff occurred. Sterling Bank did not sign or consent to either the Payoff Letter or the Satisfaction nor was Sterling Bank a party to either document in order to effectuate a release. These actions, obligations, and negotiations by Mill Steel and debtor ratified the DACA.

Moreover, on September 2, 2014, Kennon Whaley, debtor's CEO, testified in a pending criminal case that:

> "[I]n order for [Mill Steel] to give us credit, he's taken a first lien on everything I own. Every company I have, he's got first lien rights, he's got stock pledge agreements, he's got bank control agreements. They can go in and take the money. They can just come in and take over. And Southeastern is the key, and right now Southeastern is in default."

Thus, the debtor's CEO provided further evidence that the parties had knowledge of the DACA and that it remained in effect post-payoff.

Ratification of a contract, or provision thereof, is recognized by Alabama law. *See Wilson v. S. Med. Ass'n*, 547 So. 2d 510, 514 (Ala. 1989); *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305 (Ala. 1986); *Kachler v. Taylor*, 849 F. Supp. 1503, 1520 (M.D. Ala. 1994); *Ford Motor Credit Co. v. Pescia*, 2001 WL 617524, at *4 (M.D. Ala. May 14, 2001), *aff'd* 277 F.3d 1380 (11th Cir. 2001)("Under the doctrine of ratification, a party, by his actions and acceptance of the benefits of a contract and by operating under that contract may ratify and confirm it.") (citations omitted). Here, Mill Steel extended credit and the debtor accepted the benefits of the contract. The parties operated as though the DACA was still effective throughout the negotiation period and subsequent to the 2013 Agreement. Thus, their actions ratified the DACA.

### b. as a result of the discrepancy in the actual account numbers and the numbers contained in the DACA?

The trustee also contends that the DACA is invalid as a result of the discrepancy in the account numbers. Specifically, the trustee contends that in order to comply with § 7-9A-104 and provide an authenticated record, the specific account numbers must be listed. However, contrary to the trustee's contention, the court can find no provision of the law that would require the specific account to be identified in order for the DACA to be valid. The law actually provides: "[a] secured party has control of a deposit account if ... the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor." Ala. Code § 7-PA-104(a)(2). Again, nothing here requires the specific identification of account numbers.

Moreover, it is clear that at all times the parties, the debtor, Mill Steel, and Sterling Bank, knew to which accounts the DACA applied. The same three accounts were used throughout the relationship although the account numbers actually created differed from the account numbers identified in the agreement. Furthermore, the discrepancies between the account numbers contained in the DACA and those actually maintained by the debtor were of the making of the debtor and Sterling Bank and not of Mill Steel.

Further, nothing in the statute requires a public filing of a DACA in order to protect third parties. Therefore, the account number discrepancy would be important only to the parties to the DACA. Here, the parties to the DACA had no confusion or disagreement as to the accounts controlled.

The overwhelming evidence now before the court leads to the finding that none of the parties to the DACA would or could have denied Mill Steel's interest in the deposited funds. Therefore the court concludes that the DACA was ratified post-payoff and is enforceable despite discrepancy in account numbers.

**IV. Even if the DACA is held to be invalid, does Mill Steel's security agreement encumber funds in the debtor's Sterling Bank accounts through the doctrine of tracing and apart from the provisions of § 7-9A-104?**

Alternatively, if the undersigned erred in determining that the DACA was ratified post-payoff, the funds contained in the debtor's bank accounts are derived from the sale of Mill Steel's collateral and are traceable thereto. Mill Steel perfected its security interest in the debtor's inventory, proceeds therefrom, and accounts receivable in the 2013 Agreement. Alabama law provides that "[a] security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected." Ala. Code § 7-9A-315(c).[5] In the event that the proceeds constitute identifiable cash proceeds of the secured creditor's collateral, then there is no need to have a deposit account control agreement to perfect the secured creditor's security interest in the cash transferred into the account. *Ex parte Alabama Mobile Homes, Inc.,* 468 So. 2d 156, 160 (Ala. 1985); *In re Delco Oil, Inc.,* 599 F.3d 1255 (11th Cir. 2010).

In order to identify whether proceeds are "identifiable cash proceeds", Alabama courts have used the "lowest intermediate balance rule". *See Ex parte Alabama Mobile Homes, Inc.,* 468 So. 2d at 160 ("This rule provides a presumption that proceeds of the sale of collateral remain in the account as long as the account balance equals or exceeds the amount of the proceeds. The funds are 'identified' based on the assumption that the debtor spends his own money out of the account before he spends the funds encumbered by the security interest. If the account balance drops below the amount of the proceeds, the security interest in the funds on deposit abates accordingly. This lower balance is not increased if funds [constituting non-proceeds] are later deposited in the account.")

At trial, the trustee asserted that other equitable principles of tracing would be more appropriate under the circumstances of this case. However, the trustee did not undertake to introduce any evidence concerning the application of these other equitable principles or the purported results therefrom. Yet, the trustee did argue that the strict application of the lowest intermediate balance rule might result in what the trustee called "double-dipping" (i.e. funds debited from the non-proceeds balance of the relevant bank account used to purchase new inventory subject to Mill Steel's security interest.).

---

[5] Regarding the continuation of perfection, the Alabama Code provides in pertinent part:

"A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attached to the proceeds unless:
(1) the following conditions are satisfied:
    (A) a field financing statement covers the original collateral;
    (B) the proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and
    (C) the proceeds are not acquired with cash proceeds;
(2) the proceeds are identifiable cash proceeds; or
(3) [inapplicable]."
Ala. Code §7-9A-315(d).

Mill Steel presented a chart in support of its tracing argument. *See* Appendix A. The chart is a summary of relevant bank statement, deposit slips, general ledger entries, and the trustee's own filing in the bankruptcy case. The first entry in Mill Steel's chart is a balance entry of $93,643.10, which represents the ending balance of the debtor's Sterling Account (operating) as of September 21, 2014. Mill Steel identified that balance as the "Non-Proceeds Portion of Balance" leaving the "Proceeds Portion of Balance" [the portion of the balance that constitutes identifiable proceeds of Mill Steel's collateral] with a balance of $0.00. From this date through November 28, 2014, Mill Steel details the source of all funds deposited into this bank account through the use of corresponding entries from the debtor's 2014 general ledger, as well as certain deposit slips, and the Trustee's Small Business Operating Report dated February 10, 2015. To the extent funds deposited into this account relate to the sale of inventory generating accounts receivable (which serve as Mill Steel's collateral), the chart reflects that these funds increased the "Proceeds Portion of Balance." To the extent funds deposited into this account do not relate to accounts receivable or inventory of the debtor, the chart reflects that the deposit of these funds increased the "Non-Proceeds Portion of Balance," the amount of which does not constitute identifiable proceeds of Mill Steel's collateral.

The chart also identifies all transfers out of the Sterling Account by using the bank statements that correspond to this period of time, and then applies the lowest intermediate balance rule to determine how each transfer out of the Sterling Account affects the "Proceeds Portion of Balance" and the "Non-Proceeds Portion of Balance." As required by the lowest intermediate balance rule, the chart reflects that all transfers out of the Sterling Account are debited from the "Non-Proceeds Portion of Balance" (the debtor's own funds) until the "Non-Proceeds Portion of Balance" is depleted. Once this occurs, all subsequent debits from the bank account are debited from the "Proceeds Portion of Balance" until the "Non-Proceeds portion of Balance" is replenished. Once the "Non-Proceeds Portion of Balance" is replenished, the chart reflects that all transfers out of the Sterling Account are debited from the "Non-Proceeds Portion of Balance" until that portion of the balance is once again depleted, requiring subsequent transfers to be debited from the "Proceeds Portion of Balance."

Based on the foregoing application of the lowest intermediate balance rule, the Court concludes that, even if the DACA is found to be invalid, Mill Steel is has a perfected security interest with regard to the funds deposited in the debtor's bank accounts.

## Conclusion

For the foregoing reasons, the court finds that the debtor's objection to the claim of Mill Steel is not well taken, and the claim will be allowed as filed. Further, the court finds that Mill Steel has a valid and perfected security interest in the debtor's property as described in the 2013 Agreement and the accompanying UCC-1 Financing Statement. Finally, the court finds that the DACA between the debtor, Mill Steel, and Sterling Bank was effective having been ratified by the parties or alternatively, that the funds in the debtor's bank accounts are

encumbered by the security agreement under the 2013 Agreement.   A separate order will enter accordingly.

Done this 3rd day of May, 2016.

*Dwight A. Williams, Jr.*

Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Debtor
   Defendants
   J. Lester Alexander, Plaintiff/Trustee
   Brent B. Barriere, Attorney for Plaintiff
   William D. Schilling, Attorney for Plaintiff
   Michael L. Hall, Attorney for Defendants
   Brent D. Hitson, Attorney for Defendants

# APPENDIX A

| SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
| Ending Balance September 21, 2014 | | 0.00 | | | | 93,643.10 | 0.00 | 93,643.10 |
| 22-Sep-14 | Deposit | 149,942.34 | 148,695.39 | 1,246.95 | 0.00 | 243,585.44 | 148,695.39 | 94,890.05 |
| 22-Sep-14 | Dom Wire Out B I B North Shore Metals Inc. | 0.00 | 0.00 | 0.00 | 1,000.00 | 242,585.44 | 147,695.39 | 94,890.05 |
| 22-Sep-14 | Check Card Purchase (Sams Internet) | 0.00 | 0.00 | 0.00 | 141.60 | 242,443.84 | 147,695.39 | 94,748.45 |
| 22-Sep-14 | Check Card Purchase (Hot Wire Sales) | 0.00 | 0.00 | 0.00 | 121.44 | 242,322.40 | 147,695.39 | 94,627.01 |
| 22-Sep-14 | Check Card Purchase (Blue Martini Miami FL) | 0.00 | 0.00 | 0.00 | 399.73 | 241,922.67 | 147,695.39 | 94,227.28 |
| 22-Sep-14 | Check Card Purchase (TGI Fridays Atlanta GA) | 0.00 | 0.00 | 0.00 | 25.87 | 241,896.80 | 147,695.39 | 94,201.41 |
| 22-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 6.19 | 241,890.61 | 147,695.39 | 94,195.22 |
| 22-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 78.71 | 241,811.90 | 147,695.39 | 94,116.51 |
| 22-Sep-14 | Check Card Purchase (Flemings Coral Gables FL) | 0.00 | 0.00 | 0.00 | 371.04 | 241,440.86 | 147,695.39 | 93,745.47 |
| 22-Sep-14 | Check Card Purchase (Atlanta Airport S Plz Express Atlanta GA) | 0.00 | 0.00 | 0.00 | 32.00 | 241,408.86 | 147,695.39 | 93,713.47 |
| 22-Sep-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 3,276.28 | 238,132.58 | 147,695.39 | 90,437.19 |
| 22-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 32,562.78 | 205,569.80 | 115,132.61 | 90,437.19 |

26428385 v2

Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document    Page 63 of 74
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document    Page 14 of 25

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| 23-Sep-14 | Transfer (Dep 1005268550 from WebExpress) | 0.00 | 0.00 | 0.00 | 4,476.53 | 201,093.27 | 115,132.61 | 85,960.66 |
| 23-Sep-14 | POS Refund[1] | 0.58 | 0.00 | 0.58 | 0.00 | 201,093.85 | 115,132.61 | 85,961.24 |
| 23-Sep-14 | Deposit | 8,128.71 | 8,128.71 | 0.00 | 0.00 | 209,222.56 | 123,261.32 | 85,961.24 |
| 23-Sep-14 | Deposit | 29,830.20 | 29,830.20 | 0.00 | 0.00 | 239,052.76 | 153,091.52 | 85,961.24 |
| 23-Sep-14 | Check Card Purchase (Wallover Oil Company) | 0.00 | 0.00 | 0.00 | 2,526.51 | 236,526.25 | 153,091.52 | 83,434.73 |
| 23-Sep-14 | Check Card Purchase (Pilot Priceville AL) | 0.00 | 0.00 | 0.00 | 86.24 | 236,440.01 | 153,091.52 | 83,348.49 |
| 23-Sep-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 839.18 | 235,600.83 | 153,091.52 | 82,509.31 |
| 23-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 40,153.12 | 195,447.71 | 112,938.40 | 82,509.31 |
| 24-Sep-14 | POS Purchase (Amazon.com) | 0.00 | 0.00 | 0.00 | 89.07 | 195,358.64 | 112,938.40 | 82,420.24 |
| 24-Sep-14 | Check Card Purchase (Express Oil Change Decatur AL) | 0.00 | 0.00 | 0.00 | 99.59 | 195,259.05 | 112,938.40 | 82,320.65 |
| 24-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 40,627.65 | 154,631.40 | 72,310.75 | 82,320.65 |
| 25-Sep-14 | Preauthorized Credit | 236,260.46 | 236,260.46 | 0.00 | 0.00 | 390,891.86 | 308,571.21 | 82,320.65 |
| 25-Sep-14 | Dom Wire Out B I B (Utica Leaseco) | 0.00 | 0.00 | 0.00 | 132,199.94 | 258,691.92 | 258,691.92 | 0.00 |
| 25-Sep-14 | Deposit | 7,702.44 | 7,702.44 | 0.00 | 0.00 | 266,394.36 | 266,394.36 | 0.00 |
| 25-Sep-14 | Check Card Purchase (Jack's Hueytown AL) | 0.00 | 0.00 | 0.00 | 22.25 | 266,372.11 | 266,372.11 | 0.00 |
| 25-Sep-14 | Check Card Purchase (MSFT Online WA) | 0.00 | 0.00 | 0.00 | 11.44 | 266,360.67 | 266,360.67 | 0.00 |

64

| | | SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
| 25-Sep-14 | Check Card Purchase (Wendy's Fulton MS) | 0.00 | 0.00 | 0.00 | 9.50 | 266,351.17 | 266,351.17 | 0.00 |
| 25-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 92.98 | 266,258.19 | 266,258.19 | 0.00 |
| 25-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 3,042.81 | 263,215.38 | 263,215.38 | 0.00 |
| 26-Sep-14 | Check Card Purchase (Comfort Inns Bessemer AL) | 0.00 | 0.00 | 0.00 | 83.39 | 263,131.99 | 263,131.99 | 0.00 |
| 26-Sep-14 | Check Card Purchase (Yummy Donuts Kolaches Auburn AL) | 0.00 | 0.00 | 0.00 | 12.82 | 263,119.17 | 263,119.17 | 0.00 |
| 26-Sep-14 | Check Card Purchase (Chevron Shorter AL) | 0.00 | 0.00 | 0.00 | 123.31 | 262,995.86 | 262,995.86 | 0.00 |
| 26-Sep-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 27,389.77 | 235,606.09 | 235,606.09 | 0.00 |
| 26-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 10,083.94 | 225,522.15 | 225,522.15 | 0.00 |
| 29-Sep-14 | POS Refund (Academy.com Katy TX)[1] | 1.81 | 0.00 | 1.81 | 0.00 | 225,523.96 | 225,522.15 | 1.81 |
| 29-Sep-14 | Deposit | 69,915.05 | 69,882.35 | 32.70 | 0.00 | 295,439.01 | 295,404.50 | 34.51 |
| 29-Sep-14 | Check Card Purchase (Videojet Technologies Inc. IL) | 0.00 | 0.00 | 0.00 | 2,292.91 | 293,146.10 | 293,146.10 | 0.00 |
| 29-Sep-14 | Check Card Purchase (The Bradbury Co Inc. KS) | 0.00 | 0.00 | 0.00 | 3,767.40 | 289,378.70 | 289,378.70 | 0.00 |
| 29-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 75.47 | 289,303.23 | 289,303.23 | 0.00 |

65

26428385 v2

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| | **SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015** | | | | | | | |
| 29-Sep-14 | Check Card Purchase (Amazon Mktplace Pmts Amazon.com WA) | 0.00 | 0.00 | 0.00 | 25.48 | 289,277.75 | 289,277.75 | 0.00 |
| 29-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 77.28 | 289,200.47 | 289,200.47 | 0.00 |
| 29-Sep-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 18.52 | 289,181.95 | 289,181.95 | 0.00 |
| 29-Sep-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 1,638.53 | 287,543.42 | 287,543.42 | 0.00 |
| 29-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 99,413.65 | 188,129.77 | 188,129.77 | 0.00 |
| 30-Sep-14 | Dom Wire Out B I B (Northshore Metals Inc.) | 0.00 | 0.00 | 0.00 | 1,000.00 | 187,129.77 | 187,129.77 | 0.00 |
| 30-Sep-14 | Dom Wire Out B I B (Lousteel LLC) | 0.00 | 0.00 | 0.00 | 14,804.90 | 172,324.87 | 172,324.87 | 0.00 |
| 30-Sep-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 917.46 | 171,407.41 | 171,407.41 | 0.00 |
| 30-Sep-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 8,136.23 | 163,271.18 | 163,271.18 | 0.00 |
| 01-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 38,594.36 | 124,676.82 | 124,676.82 | 0.00 |
| 02-Oct-14 | Check Card Purchase (Chevron Auburn AL) | 0.00 | 0.00 | 0.00 | 124.60 | 124,552.22 | 124,552.22 | 0.00 |
| 02-Oct-14 | Check Card Purchase (Jack's Auburn AL) | 0.00 | 0.00 | 0.00 | 25.44 | 124,526.78 | 124,526.78 | 0.00 |

| | | | SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015 | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
| 02-Oct-14 | Check Card Purchase (Krystal 3 Auburn AL) | 0.00 | 0.00 | 0.00 | 11.41 | 124,515.37 | 124,515.37 | 0.00 |
| 02-Oct-14 | Check Card Purchase (Ruth Birmingham AL) | 0.00 | 0.00 | 0.00 | 207.66 | 124,307.71 | 124,307.71 | 0.00 |
| 02-Oct-14 | Check Card Purchase (Mobile Yacht Club Mobile AL) | 0.00 | 0.00 | 0.00 | 52.76 | 124,254.95 | 124,254.95 | 0.00 |
| 02-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 39,641.96 | 84,612.99 | 84,612.99 | 0.00 |
| 03-Oct-14 | Deposit | 132,754.54 | 132,754.54 | 0.00 | 0.00 | 217,367.53 | 217,367.53 | 0.00 |
| 03-Oct-14 | Check Card Purchase (Krystal Bir008 Birmingham AL) | 0.00 | 0.00 | 0.00 | 11.64 | 217,355.89 | 217,355.89 | 0.00 |
| 03-Oct-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 24,564.76 | 192,791.13 | 192,791.13 | 0.00 |
| 03-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 26,108.99 | 166,682.14 | 166,682.14 | 0.00 |
| 06-Oct-14 | Preauthorized Credit | 83,194.75 | 83,194.75 | 0.00 | 0.00 | 249,876.89 | 249,876.89 | 0.00 |
| 06-Oct-14 | Dom Wire Out B I B (Yellen Metals, LLC) | 0.00 | 0.00 | 0.00 | 19,799.86 | 230,077.03 | 230,077.03 | 0.00 |
| 06-Oct-14 | Deposit | 164,755.25 | 164,755.25 | 0.00 | 0.00 | 394,832.28 | 394,832.28 | 0.00 |
| 06-Oct-14 | Check Card Purchase (Uncle Bob's Montgomery AL) | 0.00 | 0.00 | 0.00 | 245.95 | 394,586.33 | 394,586.33 | 0.00 |
| 06-Oct-14 | Check Card Purchase (Uncle Bob's Montgomery AL) | 0.00 | 0.00 | 0.00 | 98.00 | 394,488.33 | 394,488.33 | 0.00 |
| 06-Oct-14 | Check Card Purchase (Google Storage CA) | 0.00 | 0.00 | 0.00 | 1.99 | 394,486.34 | 394,486.34 | 0.00 |

26428385 v2
Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document    Page 67 of 74
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document    Page 18 of 25

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| 06-Oct-14 | Check Card Purchase (Charter Communications AL) | 0.00 | 0.00 | 0.00 | 115.95 | 394,370.39 | 394,370.39 | 0.00 |
| 06-Oct-14 | Check Card Purchase (El Dorado Mexican Restaurant Auburn AL) | 0.00 | 0.00 | 0.00 | 113.22 | 394,257.17 | 394,257.17 | 0.00 |
| 06-Oct-14 | Check Card Purchase (Mapco Express Auburn AL) | 0.00 | 0.00 | 0.00 | 14.54 | 394,242.63 | 394,242.63 | 0.00 |
| 06-Oct-14 | Check Card Purchase (The Home Depot Opelika AL) | 0.00 | 0.00 | 0.00 | 109.68 | 394,132.95 | 394,132.95 | 0.00 |
| 06-Oct-14 | Check Card Purchase (The Home Depot Opelika AL) | 0.00 | 0.00 | 0.00 | 12.82 | 394,120.13 | 394,120.13 | 0.00 |
| 06-Oct-14 | Check Card Purchase (The Home Depot Opelika AL) | 0.00 | 0.00 | 0.00 | 298.25 | 393,821.88 | 393,821.88 | 0.00 |
| 06-Oct-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 1,865.91 | 391,955.97 | 391,955.97 | 0.00 |
| 06-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 21,645.54 | 370,310.43 | 370,310.43 | 0.00 |
| 07-Oct-14 | POS Purchase | 0.00 | 0.00 | 0.00 | 71.58 | 370,238.85 | 370,238.85 | 0.00 |
| 07-Oct-14 | Dom Wire Out B I B (Mainline Metals) | 0.00 | 0.00 | 0.00 | 17,185.15 | 353,053.70 | 353,053.70 | 0.00 |
| 07-Oct-14 | Deposit | 223,687.88 | 222,782.90 | 904.98 | 0.00 | 576,741.58 | 575,836.60 | 904.98 |
| 07-Oct-14 | Check Card Purchase (SXM SiriusXM.com NY) | 0.00 | 0.00 | 0.00 | 62.59 | 576,678.99 | 575,836.60 | 842.39 |
| 07-Oct-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 371.70 | 576,307.29 | 575,836.60 | 470.69 |

SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015

68

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| 07-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 35,021.46 | 541,285.83 | 541,285.83 | 0.00 |
| 08-Oct-14 | Transfer Credit[2] | 35,021.46 | 0.00 | 35,021.46 | 0.00 | 576,307.29 | 541,285.83 | 35,021.46 |
| 08-Oct-14 | Transfer Credit[2] | 371.70 | | 371.70 | 0.00 | 576,678.99 | 541,285.83 | 35,393.16 |
| 08-Oct-14 | Automatic Transfer to Payroll Account | 0.00 | 0.00 | 0.00 | 639.20 | 576,039.79 | 541,285.83 | 34,753.96 |
| 08-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 13,345.26 | 562,694.53 | 527,940.57 | 34,753.96 |
| 09-Oct-14 | Transfer Credit[2] | 13,345.26 | 0.00 | 13,345.26 | 0.00 | 576,039.79 | 527,940.57 | 48,099.22 |
| 09-Oct-14 | Transfer Credit[2] | 639.20 | 0.00 | 639.20 | 0.00 | 576,678.99 | 527,940.57 | 48,738.42 |
| 09-Oct-14 | Check Card Purchase (TLF AJ Heil Florist OH) | 0.00 | 0.00 | 0.00 | 183.60 | 576,495.39 | 527,940.57 | 48,554.82 |
| 09-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 71,600.94 | 504,894.45 | 456,339.63 | 48,554.82 |
| 10-Oct-14 | Transfer Credit | 71,600.94 | 0.00 | 71,600.94 | 0.00 | 576,495.39 | 456,339.63 | 120,155.76 |
| 10-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 424.51 | 576,070.88 | 455,915.12 | 120,155.76 |
| 10-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 5,120.99 | 570,949.89 | 450,794.13 | 120,155.76 |
| 14-Oct-14 | Transfer Credit[2] | 424.51 | 0.00 | 424.51 | 0.00 | 571,374.40 | 450,794.13 | 120,580.27 |
| 14-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 21,160.40 | 550,214.00 | 429,633.73 | 120,580.27 |
| 15-Oct-14 | Automatic Transfer[2] | 23,610.93 | 0.00 | 23,610.93 | 0.00 | 573,824.93 | 429,633.73 | 144,191.20 |
| 16-Oct-14 | Automatic Transfer[2] | 2,644.38 | 0.00 | 2,644.38 | 0.00 | 576,469.31 | 429,633.73 | 146,835.58 |
| 17-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 3,475.92 | 572,993.39 | 426,157.81 | 146,835.58 |

69

26428385 v2

Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document    Page 69 of 74
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document    Page 20 of 25

| | | | | Deposit Amount From | | | | Non Proceeds |
| Date | Transaction | Total Deposit | Proceeds From Customers | From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| | **SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015** | | | | | | | |
| 20-Oct-14 | Automatic Transfer[2] | 2,783.34 | 0.00 | 2,783.34 | 0.00 | 575,776.73 | 426,157.81 | 149,618.92 |
| 21-Oct-14 | Automatic Transfer[2] | 718.66 | 0.00 | 718.66 | 0.00 | 576,495.39 | 426,157.81 | 150,337.58 |
| 24-Oct-14 | Ck # 90270 for Cashier's Check to Benton & Centeno | 0.00 | 0.00 | 0.00 | 21,000.00 | 555,495.39 | 426,157.81 | 129,337.58 |
| 24-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 230.77 | 555,264.62 | 425,927.04 | 129,337.58 |
| 27-Oct-14 | Transfer Credit[2] | 230.77 | 0.00 | 230.77 | 0.00 | 555,495.39 | 425,927.04 | 129,568.35 |
| 27-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 288.23 | 555,207.16 | 425,638.81 | 129,568.35 |
| 28-Oct-14 | Transfer Credit[2] | 288.23 | 0.00 | 288.23 | 0.00 | 555,495.39 | 425,638.81 | 129,856.58 |
| 28-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 15,000.00 | 540,495.39 | 410,638.81 | 129,856.58 |
| 29-Oct-14 | Automatic Transfer | 15,000.00 | 0.00 | 15,000.00 | 0.00 | 555,495.39 | 410,638.81 | 144,856.58 |
| 30-Oct-14 | Ck # 44910 [Four Cashier's Check :to APCO 10,771.46; to Montg. Water Works 227,96; to EarthLink 554.06; to Blue Ocean Tech 894.66) | 0.00 | 0.00 | 0.00 | 12,448.14 | 543,047.25 | 410,638.81 | 132,408.44 |
| 30-Oct-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 832.17 | 542,215.08 | 409,806.64 | 132,408.44 |
| 31-Oct-14 | Transfer Credit[2] | 832.17 | 0.00 | 832.17 | 0.00 | 543,047.25 | 409,806.64 | 133,240.61 |
| 31-Oct-14 | Ck # 67440 for Cashier's Check to Harmon Dennis Bradshaw | 0.00 | 0.00 | 0.00 | 37,445.60 | 505,601.65 | 409,806.64 | 95,795.01 |
| 03-Nov-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 165.97 | 505,435.68 | 409,640.67 | 95,795.01 |

26428385 v2
Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document    Page 70 of 74
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document    Page 21 of 25

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
|  | **SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015** |

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| 04-Nov-14 | Automatic Transfer[2] | 165.97 | 0.00 | 165.97 | 0.00 | 505,601.65 | 409,640.67 | 95,960.98 |
| 07-Nov-14 | Deposit | 251,351.08 | 251,351.08 | 0.00 | 0.00 | 756,952.73 | 660,991.75 | 95,960.98 |
| 07-Nov-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 1,102.12 | 755,850.61 | 659,889.63 | 95,960.98 |
| 10-Nov-14 | Transfer Credit | 1,102.12 | 0.00 | 1,102.12 | 0.00 | 756,952.73 | 659,889.63 | 97,063.10 |
| 10-Nov-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 30.95 | 756,921.78 | 659,858.68 | 97,063.10 |
| 12-Nov-14 | Deposit | 234,270.64 | 234,270.64 | 0.00 | 0.00 | 991,192.42 | 894,129.32 | 97,063.10 |
| 12-Nov-14 | Automatic Transfer[2] | 30.95 | 0.00 | 30.95 | 0.00 | 991,223.37 | 894,129.32 | 97,094.05 |
| 13-Nov-14 | Maintenance Fee | 0.00 | 0.00 | 0.00 | 321.87 | 990,901.50 | 894,129.32 | 96,772.18 |
| 19-Nov-14 | Maintenance Fee Refund[3] | 321.87 | 0.00 | 321.87 | 0.00 | 991,223.37 | 894,129.32 | 97,094.05 |
| 21-Nov-14 | Ck # 82970 for Cashiers Check to DTA Security Services | 0.00 | 0.00 | 0.00 | 2,905.00 | 988,318.37 | 894,129.32 | 94,189.05 |
| 26-Nov-14 | Ck # 42840 for 3 Cashiers Checks: to APCO 7,434.11; to EarthLink 548.06; to Mtg. Water 156.87 | 0.00 | 0.00 | 0.00 | 8,139.04 | 980,179.33 | 894,129.32 | 86,050.01 |
| 28-Nov-14 | Deposit | 9,711.81 | 0.00 | 9,711.81 | 0.00 | 989,891.14 | 894,129.32 | 95,761.82 |
| 01-Dec-14 | Automatic Transfer to Accounts Payable | 0.00 | 0.00 | 0.00 | 756.00 | 989,135.14 | 893,373.32 | 95,761.82 |
| 02-Dec-14 | Automatic Transfer from Accounts Payable | 756.00 | 0.00 | 756.00 | 0.00 | 989,891.14 | 893,373.32 | 96,517.82 |
| 08-Dec-14 | Payment to National Security of Alabama | 0.00 | 0.00 | 0.00 | 1,152.00 | 988,739.14 | 893,373.32 | 95,365.82 |
| 10-Dec-14 | Payment to Trustee's bond | 0.00 | 0.00 | 0.00 | 7,500.00 | 981,239.14 | 893,373.32 | 87,865.82 |
| 22-Dec-14 | Transfer to Trustee's Account | 0.00 | 0.00 | 0.00 | 965,668.82 | 15,570.32 | 0.00 | 15,570.32 |

26428385 v2

Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document    Page 71 of 75
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document    Page 22 of 25

## SOUTHEASTERN STUD OPERATING ACCOUNT SEPTEMBER 22, 2014 TO MARCH 24, 2015

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|------|-------------|---------------|-------------------------|----------------------------------|-------------------|----------------------|-----------------------------|--------------------------------|
| 24-Mar-15 | Transfer to Trustee's Account | 0.00 | 0.00 | 0.00 | 8,284.84 | 7,285.48 | 0.00 | 7,285.48 |
| Totals | | 1,771,396.00 | 1,589,608.71 | 181,787.29 | (1,857,753.62) | | | |

## TRUSTEE'S ACCOUNT DECEMBER 22, 2014 TO FEBRUARY 9, 2015

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|------|-------------|---------------|-------------------------|----------------------------------|-------------------|----------------------|-----------------------------|--------------------------------|
| Ending Balance December 21 2014 | | 0.00 | | | | 0.00 | 0.00 | 0.00 |
| 22-Dec-14 | Transfer from Operating Account | 0.00 | | | | 965,668.82 | 893,373.32 | 72,295.50 |
| 31-Dec-14 | Deposit (interest) | 2.00 | 0.00 | 2.00 | 0.00 | 965,670.82 | 893,373.32 | 72,297.50 |
| 05-Jan-15 | Deposit (miscellaneous) | 33.00 | 0.00 | 33.00 | 0.00 | 965,703.82 | 893,373.32 | 72,330.50 |
| 06-Jan-15 | Payment to DTA Security | 0.00 | 0.00 | 0.00 | (13,135.00) | 952,568.82 | 893,373.32 | 59,195.50 |
| 06-Jan-15 | Payment to Alabama Power | 0.00 | 0.00 | 0.00 | (17,171.00) | 935,397.82 | 893,373.32 | 42,024.50 |
| 09-Jan-15 | Payment to Premium Finance | 0.00 | 0.00 | 0.00 | (16,540.00) | 918,857.82 | 893,373.32 | 25,484.50 |

72

26428385 v2

Case 15-03014   Doc 208   Filed 03/07/16   Entered 03/07/16 12:52:55   Desc Main
Case 15-03014   Doc 209   Filed 05/03/16   Entered 05/03/16 11:32:52   Desc Main
Document   Page 23 of 25

**TRUSTEE'S ACCOUNT DECEMBER 22, 2014 TO FEBRUARY 9, 2015**

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| 20-Jan-15 | Payment to DTA Security Deposit | 0.00 | 0.00 | 0.00 | (1,356.50) | 917,501.32 | 893,373.32 | 24,128.00 |
| 30-Jan-15 | (interest) | 8.00 | 0.00 | 8.00 | 0.00 | 917,509.32 | 893,373.32 | 24,136.00 |
| 09-Feb-15 | Transfer to 2d Trustee Account | 0.00 | 0.00 | 0.00 | (917,509.32) | 0.00 | 0.00 | 0.00 |
| **Totals** | | 43.00 | 0.00 | 43.00 | (965,711.82) | | | |

**TRUSTEE'S ACCOUNT FEBRUARY 9, 2015 TO SEPTEMBER 30, 2015**

| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
|---|---|---|---|---|---|---|---|---|
| Ending Balance February 8, 2015 | | 0.00 | | | | 0.00 | 0.00 | 0.00 |
| 09-Feb-15 | Transfer from 1st Trustee's Account | 917,509.32 | 893,373.32 | 24,136.00 | 0.00 | 917,509.32 | 893,373.32 | 24,136.00 |
| 09-Feb-15 | Payment to DTA Security | 0.00 | 0.00 | 0.00 | (1,356.50) | 916,152.82 | 893,373.32 | 22,779.50 |
| 19-Feb-15 | Payment to DTA Security | 0.00 | 0.00 | 0.00 | (1,356.50) | 914,796.32 | 893,373.32 | 21,423.00 |
| 20-Feb-15 | Deposit (interest) | 3.01 | 0.00 | 3.01 | 0.00 | 914,799.33 | 893,373.32 | 21,426.01 |
| 23-Feb-15 | Deposit (Return of Premium from Harmon Dennis Bradshaw) | 189.00 | 0.00 | 189.00 | 0.00 | 914,988.33 | 893,373.32 | 21,615.01 |
| 23-Feb-15 | Deposit (COBRA Dental) | 32.70 | 0.00 | 32.70 | 0.00 | 915,021.03 | 893,373.32 | 21,647.71 |
| 24-Feb-15 | Payment to Alabama Power | 0.00 | 0.00 | 0.00 | (1,365.95) | 913,655.08 | 893,373.32 | 20,281.76 |
| 30-Jan-15 | Deposit (interest) | 8.00 | 0.00 | 8.00 | 0.00 | 913,663.08 | 893,373.32 | 20,289.76 |

26428385 v2

Case 15-03014   Doc 208   Filed 03/07/16   Entered 03/07/16 12:52:55   Desc Main Document   Page 73 of 74
Case 15-03014   Doc 209   Filed 05/03/16   Entered 05/03/16 11:32:52   Desc Main Document   Page 24 of 25

| | | TRUSTEE'S ACCOUNT FEBRUARY 9, 2015 TO SEPTEMBER 30, 2015 | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Transaction | Total Deposit | Proceeds From Customers | Deposit Amount From Other Source | Withdrawal Amount | Entire Balance After | Proceeds Portion of Balance | Non Proceeds Portion of Balance |
| 06-Mar-15 | Payment to Harland Clark for checks | 0.00 | 0.00 | 0.00 | (49.49) | 913,613.59 | 893,373.32 | 20,240.27 |
| 12-Mar-15 | Payment to Alabama Power | 0.00 | 0.00 | 0.00 | (2,115.62) | 911,497.97 | 893,373.32 | 18,124.65 |
| 24-Mar-15 | Transfer from 1st Trustee's Account | 8,284.84 | 0.00 | 8,284.84 | 0.00 | 919,782.81 | 893,373.32 | 26,409.49 |
| 24-Mar-15 | Deposit (interest) | 8.00 | 0.00 | 8.00 | 0.00 | 919,790.81 | 893,373.32 | 26,417.49 |
| 23-Apr-15 | Printed Check Image | 0.00 | 0.00 | 0.00 | (3.00) | 919,787.81 | 893,373.32 | 26,414.49 |
| 23-Apr-15 | Deposit (interest) | 7.56 | 0.00 | 7.56 | 0.00 | 919,795.37 | 893,373.32 | 26,422.05 |
| 21-May-15 | Printed Check Image | 0.00 | 0.00 | 0.00 | (3.00) | 919,792.37 | 893,373.32 | 26,419.05 |
| 21-May-15 | Deposit (interest) | 7.06 | 0.00 | 7.06 | 0.00 | 919,799.43 | 893,373.32 | 26,426.11 |
| 23-Jun-15 | Printed Check Image | 0.00 | 0.00 | 0.00 | (3.00) | 919,796.43 | 893,373.32 | 26,423.11 |
| 23-Jun-15 | Deposit (interest) | 8.32 | 0.00 | 8.32 | 0.00 | 919,804.75 | 893,373.32 | 26,431.43 |
| 23-Jul-15 | PO Box Renewal Fee | 0.00 | 0.00 | 0.00 | (62.00) | 919,742.75 | 893,373.32 | 26,369.43 |
| 24-Jul-15 | Regions Bank Charges | 0.00 | 0.00 | 0.00 | (3.00) | 919,739.75 | 893,373.32 | 26,366.43 |
| 24-Jul-15 | Deposit (interest) | 7.81 | 0.00 | 7.81 | 0.00 | 919,747.56 | 893,373.32 | 26,374.24 |
| 30-Jul-15 | Additional PO Box Rent & Late Fee | 0.00 | 0.00 | 0.00 | (25.00) | 919,722.56 | 893,373.32 | 26,349.24 |
| 25-Aug-15 | Printed Check Image fee and stop payment fee | 0.00 | 0.00 | 0.00 | (39.00) | 919,683.56 | 893,373.32 | 26,310.24 |
| 25-Aug-15 | Deposit (interest) | 8.06 | 0.00 | 8.06 | 0.00 | 919,691.62 | 893,373.32 | 26,318.30 |
| 23-Sep-15 | Refund from Premium Assignment Corp | 3,243.38 | 0.00 | 3,243.38 | 0.00 | 922,935.00 | 893,373.32 | 29,561.68 |
| 30-Sep-15 | Printed Check Image | 0.00 | 0.00 | 0.00 | (3.00) | 922,932.00 | 893,373.32 | 29,558.68 |
| 30-Sep-15 | Deposit (interest) | 9.08 | 0.00 | 9.08 | 0.00 | 922,941.08 | 893,373.32 | 29,567.76 |
| **Totals** | | 929,326.14 | 893,373.32 | 35,952.82 | (6,385.06) | | | |

26428385 v2
Case 15-03014    Doc 208    Filed 03/07/16    Entered 03/07/16 12:52:55    Desc Main
Document      Page 74 of 74
Case 15-03014    Doc 209    Filed 05/03/16    Entered 05/03/16 11:32:52    Desc Main
Document      Page 25 of 25